## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BETTY SHAW, on Behalf of Herself and | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.: 15-CV-173-CVE-FHM |
| | ) | |
| BOKF, NATIONAL ASSOCIATION, f/k/a | ) | |
| BANK OF OKLAHOMA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF, BETTY SHAW'S, MEMORANDUM
## IN OPPOSITION TO MOTION TO DISMISS

Plaintiff, Betty Shaw, on behalf of herself and all other similarly situated, hereby submits this Memorandum in Opposition to Motion to Dismiss ("Motion") filed by Defendant, BOKF National Association, f/k/a Bank of Oklahoma, N.A. ("BOKF" or the "Bank") [Doc. #14].

## I.      INTRODUCTION

Though the Court would not know it from reading BOKF's Motion, no court, no federal agency, and no banking law has ever found that so-called *extended* overdraft fees are anything other than interest.  BOKF is right that there is authority for excluding normal overdraft fees from interest calculations.  But BOKF is wrong that regulations and rulings that apply to traditional overdraft service fees ("Overdraft Service Fees") apply equally to extended overdraft fees.  Extended overdraft fees are interest charges.  BOKF's decision to *name* the interest charges "extended overdraft fees" does nothing to change that fact.  Overdraft fees and extended overdraft fees are very different—and the Court may not, as a matter of law, find otherwise.

BOKF charges extended overdraft fees in the amount of $6.50 for accounts that remain overdrawn for a specific period of time ("Extended Overdraft Fees").  These charges are in

addition to the overdraft fees in the amount of $35.00 that are charged to customers' accounts for the actual transactions that overdraw customers' accounts.  Unlike the initial overdraft fee, the Extended Overdraft Fees are charged to customers' accounts solely based on the alleged indebtedness to BOKF that remains unpaid by customers.  Indeed, the Extended Overdraft Fees do not even relate to any specific transaction.  They are simply assessed when an account balance, *overall*, is less than zero—a negative balance that can be made up of a complex mix of transactions, overdraft transactions, and deposits.  Accordingly, the Extended Overdraft Fees charged by BOKF represent compensation for the use or forbearance of money.  Thus, by assessing these fees, BOKF is charging customers interest for the use of funds provided by BOKF.  As alleged by Plaintiff, the amount charged by BOKF far exceeds permissible interest rates set by state and federal law, and violates the National Bank Act ("NBA").

BOKF is flat-out wrong when it states that the "Comptroller of the Currency, and all courts which have decided the issue, reject Plaintiff's claim."  Motion at p. 3.  While usury has been analyzed in the context of Overdraft Service Fees, the usury issue presented by BOKF's imposition of Extended Overdraft Fees has *not* been expressly addressed by any court to date.  Any argument to the contrary stems from BOKF improperly conflating these two materially different types of fees.

## II.    SUMMARY OF COMPLAINT ALLEGATIONS

The Complaint alleges that extended overdraft fees have become a mainstay for many banks' balance sheet, despite the fact that such fees bear no relationship to the actual costs and risks of covering customers' overdrawn accounts.  Complaint at ¶ 5.  Indeed, such accounts are typically overdrawn for a short period of time and by a relatively small amount.  *Id.*  However, despite this limited exposure, banks, like BOKF, choose not to charge legally permissible interest

on overdrawn amounts until the overdraft is cured by the customer.  *Id.*  Rather, it is through the assessment of Extended Overdraft Fees that BOKF charges illegal interest rates in order to maximize overdraft penalties imposed on its customers.  *Id.*

Plaintiff alleges that, in an effort to maximize fee revenue, BOKF charged Extended Overdraft Fees on customers' checking and savings accounts that were overdrawn for a period of more than five (5) business days, and further charged such fees for every business day thereafter that an account remains in a negative balance.   Complaint at ¶ 28.   To make matters worse, BOKF charges Extended Overdraft Fees even when a consumer has repaid via deposit the transactions that originally overdrew the account.  *Id.* at ¶ 29.   In other words, the Extended Overdraft Fee is independent of any particular "overdraft" transaction—unlike a regular, $35.00 overdraft fee.  *Id.*  Thus, according to Plaintiff, the Extended Overdraft Fees charged by BOKF are akin to late fees in the credit card context, which the Supreme Court has held is a form of interest.  *Id.* at ¶ 30.   Unlike the initial $35.00 overdraft fee, BOKF renders no service to its customers in exchange for the Extended Overdraft Fees charged to customers' accounts—other than the provision of the use of money over time.  *Id.* at 32.   The Extended Overdraft Fees are charged for no reason other than to provide BOKF with additional income for advancing money to customers' accounts.  *Id.*  BOKF undertakes no additional processing, work or service when it assesses an Extended Overdraft Fee.  *Id.*  at ¶ 33.   That BOKF labels this loan of money as an Extended Overdraft Fee does not obviate the fact that the amount charged represents "payment compensating a creditor or prospective creditor for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended"—the rate of which is restricted by state and federal usury laws.  *Id.* at ¶ 34.

Plaintiff alleges that she was damaged by BOKF's wrongful policy and practice of charging Extended Overdraft Fees on numerous occasions.  Complaint at ¶ 35.  For example, Plaintiff alleges that on June 28, 2013, BOKF charged an Extended Overdraft Fee in the amount of $6.50, in addition to charging her four separate overdraft fees in the amount of $35.00 from June 21 to June 27, 2013.  *Id.* at ¶ 37.  Based on the maximum dollar amount of $108.56 that Plaintiff's account was overdrawn during the relevant period 5 business days (or 7 calendar days), the Extended Overdraft Fee in the amount of $6.50 translated to an effective annualized interest rate of approximately 312%.  *Id.* at 39.  Moreover, because Plaintiff's account remained overdrawn during the following 14 business days, BOKF charged an additional Extended Overdraft Fee for each day her account was overdrawn.  *Id.* at 40.  Accordingly, during the 19 business days (or 28 calendar days) following the day that Plaintiff's account initially became overdrawn (June 21, 2013), BOKF charged Plaintiff Extended Overdraft Fees totaling $97.50 (15 Extended Overdraft Fees in total).  *Id.*  Thus, using $115.06 as the maximum dollar amount that Plaintiff's account was overdrawn the day BOKF charged the initial Extended Overdraft Fee (June 28, 2013), the second Extended Overdraft Fee of $6.50 charged on that overdrawn amount the following business day (July 1, 2013), or 3 calendar day period, translated to an effective annualized interest rate of approximately 687%.  *Id.* at ¶ 41.  Ultimately, based on the overdrawn amount during the relevant period, the Extended Overdraft Fees of $6.50 charged by BOKF for each business day that Plaintiff's account remained overdrawn (the amount of which fluctuated from $108.56 to $199.56) translated to an effective annualized interest rate of between approximately 312% and 1,951%.  *Id.* at ¶ 43.  Accordingly, by charging the usurious Extended

Overdraft Fees to Plaintiff's account, BOKF wrongfully deprived Plaintiff of funds to which it was not entitled. *Id.* at ¶¶ 44, 45.[1]

### III.   LEGAL STANDARD

"When reviewing a motion to dismiss under Rule 12(b)(b), the court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party." *Malloy v. Reed*, No. 05-CV-0101-CVE-GHM, 2006 U.S. Dist. LEXIS 55911, at *3 (N.D. Okla. Aug. 9, 2006) (quoting *Moffett v. Halliburton Energy Servs.*, 291 F.3d 1227, 1231 (10th Cir. 2002)).   Accordingly, "[a] Rule 12(b)(6) motion 'should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Malloy*, 2006 U.S. Dist. LEXIS 55911 at *3 (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).   "The Tenth Circuit has referred to dismissal under Rule 12(b)(6) as a 'harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Billingsley v. Potter*, No. 05-CV-0130-CVE-PJC, 2006 U.S. Dist. LEXIS 78205, at *3 (N.D. Okla. Oct. 23, 2006) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (citation omitted)).   Thus, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether [he] is entitled to offer evidence to support its claims." *Billingsley*, 2006 U.S. Dist. LEXIS 78205 at *5 (quoting *Cooper Mfg. Corp. v. Home Indem. Co.*, 131 F. Supp. 2d 1230, 1232 (N.D. Okla. 2001)).

---

[1] As demonstrated by Plaintiff's specific examples, the rate of interest charged by the bank, which was between 52 and 325 times the maximum allowable interest rate of 6% pursuant to the NBA, renders the Extended Overdraft Fees charged by BOKF usurious and illegal.   Complaint at ¶¶ 48-59.

## IV.    ARGUMENT

BOKF's Motion is fundamentally flawed because it relies exclusively on authorities that address a materially *different* type of bank charge: Overdraft Service Fees.  Although Plaintiff's Complaint solely concerns the usurious imposition of Extended Overdraft Fees, the Motion focuses on an analysis of the initial overdraft fees charged to BOKF's customers.  But generally accepted principles concerning Overdraft Service Fees cannot be broadly applied to the Extended Overdraft Fees at issue here.  To do so would be to ignore the fundamental differences between the two.  Namely, unlike the Overdraft Service Fees, which are imposed by the Bank in connection with services it provides when transactions overdraw a customer's account, Extended Overdraft Fees are not linked to any Bank service, and instead, are imposed solely based on the negative balance of a customer's account—in other words, on indebtedness.  Indeed, BOKF fails to recognize that rather than supporting its position, its own cited authorities actually *support* Plaintiff's claim that the Extended Overdraft Fees imposed by the Bank should be treated as interest.  Moreover, in focusing on the inapposite Overdraft Service Fees, BOKF fails to consider current banking regulations and other authorities that defeat the very premise of the arguments set forth in the Motion.  Last, BOKF's Motion raises factual issues inappropriate for resolution at this early stage of the proceedings.  Accordingly, as set forth below, BOKF's Motion should be denied.

### A.    The Authorities To Which BOKF Cites Concern Regular Overdraft Fees—Not Extended Overdraft Fees—And Thus Do Not Apply To The Instant Case.

BOKF argues that Plaintiff has failed to state a claim for which relief may be granted because extended overdraft fees, such as those charged by BOKF, do not constitute interest.[2]

---

[2] BOKF's reliance on *Armstrong v. Colonial Bank, N.A.*, No. 06-cv-00038-ACC-KRS (M.D. Fla. April 3, 2006) (Dkt. No. 26), incorrectly cited to by BOKF, is of no help to the determination the

However, in support, BOKF relies solely on cases that analyze Overdraft Service Fees—a type of fees that Plaintiff explicitly does not challenge, and which bears no similarities to the Extended Overdraft Fees charged by BOKF after an overdraft fee is initially imposed.[3]

For example, on page 3 of the Motion, BOKF cites to *Soto v. Bank of Lancaster County*, No. 08-cv-1907, 2011 U.S. Dist. LEXIS 30045 (E.D. Pa. March 23, 2011), to support its argument that extended overdraft fees are not considered interest pursuant to the NBA by quoting the court's observation that it was aware of no authority "holding that overdraft fees arising from a deposit agreement can be interest for purposes of the NBA." *Id.* at *8.  However, the very quote to which BOKF cites makes clear that the court's statement was based *solely* on an analysis of the standard type of overdraft fees which banks impose when a transaction overdrafts a customer's account—Overdraft Service Fees.  Indeed, the only type of fees at issue in that case were the initial $35.00 overdraft fees charged by the bank in connection with plaintiff's ATM and debit-card transactions that overdrew his account.  And if there is any doubt as to whether the court's reference to "overdraft fees" should be read to include the extended overdraft fees at issue in this case, this Court need look no further than the *Soto* court's conclusion that "district courts in other circuits have uniformly held that *insufficient funds fees*

Court must make here given that the authority on which the court relied in arriving at its decision solely analyzed the issue in the context of initial overdraft fees.

[3] *See Soto v. Bank of Lancaster County*, No. 08-cv-1907, 2011 U.S. Dist. LEXIS 30045 (E.D. Pa. March 23, 2011) (addressing initial $35 overdraft fees); *Cargile v. JP Morgan Chase & Co.*, No. 09-14317, 2010 U.S. Dist. LEXIS 138308 (E.D. Mich. Nov. 23, 2010) (addressing initial $25 to $35 overdraft fees); *Video Trax, Inc. v. Nationsbank, NA*, 33 F. Supp. 2d 1041 (S.D. Fla. 1998) (addressing initial $25 overdraft fee); *In re Washington Mut. Overdraft Protection Litigation*, No. CV 03-2566 ABC (RCx), 2004 U.S. Dist. LEXIS 30214 (C.D. Cal. April 26, 2004) (addressing initial $21 overdraft fees); *Nicolas v. Deposit Guar. Nat'l Bank*, 182 F.R.D. 226 (S.D. Miss. 1998) (addressing initial $20 insufficient funds fees); *Terrell v. Hancock Bank*, 7 F. Supp. 2d 812 (S.D. Miss. 1998) (addressing initial $15 overdraft fees); *Joseph v. Commerce Bank*, No. 10-0685-CV-W-ODS, 2010 U.S. Dist. LEXIS 97664 (W.D. Mo. Sept. 17, 2010) (addressing preemption in the context of overdraft fees resulting from the high to low posting of debit card transactions).

arising from a deposit agreement are not interest under the NBA." *Id*. at \*26-27 (citing to cases analyzing only the initial overdraft fees that are not at issue here) (emphasis added).  As noted by the court, whether insufficient funds fees, or NSF Fees, are charged when a bank pays or refuses to honor overdrawn transactions does not change the analysis of whether NSF fees constitute interest.  *Id*. at \*27-28.  The Extended Overdraft Fees charged by BOKF here, are neither charged when the Bank pays an overdrawn transaction nor when it refuses to honor an overdrawn transaction.  Rather, they are charged as long as an accountholder is indebted to the Bank.  Indeed, unlike the fees at issue in *Soto*, the Extended Overdraft Fees do not even relate to any specific transaction.  They are simply assessed when an account maintains a negative balance.

BOKF's citation to the summary judgment opinion in *Cargile v. JP Morgan Chase & Co.*, No. 09-14317, 2010 U.S. Dist. LEXIS 138308 (E.D. Mich. Nov. 23, 2010), is similarly unavailing.  While BKOF tries to create the impression that *Cargile* involved the same type of fees at issue here, it did not.  Although there is a reference to "extended overdraft fees" in the "Background" section of the order, the remainder of the order makes clear that the only type of fees being addressed in *Cargile* were Overdraft Service Fees.  Moreover, the deposit agreement at issue in *Cargile* provided that negative balances—like the ones BOKF assesses Extended Overdraft Fees on—were subject to interest.  *Id.* at \*4-5.  Indeed, Chase Bank specifically alerted its customers that they would be responsible not only to pay for an overdraft fee but also to pay "accrued interest" on the overdraft amount.  *Id.*

So too did the deposit agreement at issue in the summary judgment opinion of *Video Trax, Inc. v. Nationsbank, NA*, 33 F. Supp. 2d 1041 (S.D. Fla. 1998).  In reciting the factual background of the case, the court observed that NationsBank charged its customers a "fee" when

an overdraft was created and then charged "interest" on the overdraft balance.  *Id.* at 1044-45.

The court noted:

> As evidenced by the account agreement, Plaintiff agreed in writing to pay a flat
> fee when a check presented to Defendant for payment exceeded the collected
> balance in Plaintiff's account. In addition, Defendant charged interest on overdraft
> sums to the extent those sums exceeded collected balances in Plaintiff's account.
> The rate of interest charged was Defendant's prime rate plus 3%, and was subject
> to the maximum rate permissible by law.

*Id.*  Thus, both *Video Trax* and *Cargile* actually support Plaintiff's position that charges on

overdraft balances, like the Extended Overdraft Charges charged by BOKF, constitute interest.

Notably, as demonstrated above, NationsBank was mindful of and complied with usury laws.

BOKF has chosen not to do so in this case—instead choosing to disguise interest charges with

the name "Extended Overdraft Fee."

Although *Video Trax* demonstrates that national banks know how to comply with usury

laws, the opinion is most helpful in understanding why extended overdraft fees represent interest

that is charged by a bank for the extension of credit.  In *Video Trax*, the plaintiff argued that

initial overdraft fees constituted interest under the NBA.  The court's analysis therefore began

with the definition of "interest."  Citing to Black's Law Dictionary, the court noted:

> Interest has been understood to include *any compensation allowed by law or fixed
> by the parties for the use or forbearance of money*, or the price which is fixed for
> the use of money.  The common definition of "interest rate" has been held to be
> the "percentage of an amount of money which is paid *for its use for a specified
> time*."

*Id.* at 1049-1050 (quoting *Black's Law Dictionary*, 730 (5th ed. 1979)) (emphasis added).  The

court went on to conclude that an initial overdraft fee did not fall within this definition

essentially because it was a service-based fee, and therefore, was authorized under 12 C.F.R. §

7.4002.  The court explained that the fee compensated the bank for the administrative costs

incurred in making the decision whether to honor or return a check that would overdraw a

customer's account and then processing the overdraft fee.  The court then ruled that the fee was a "fair and efficient method of allocating the administrative costs consequent to processing checks against insufficient funds."  *Video Trax*, 33 F. Supp. 2d at 1051.  Bolstering that conclusion, the court observed that the fee was charged regardless whether the bank honored or rejected the check.  *Id.* at 1056.  Moreover, it noted the decision of *First Bank v. Tony's Tortilla Factor, Inc.*, 877 S.W.2d 285 (Tex. 1994), wherein the Texas Supreme Court analyze the issue of whether insufficient funds fees constituted interest and held that "fees which are an additional charge supported by a distinctly separate and additional consideration, other than the simple lending of money, are not interest and thus do not violate the usury laws."  *Video Trax*, 33 F. Supp. 2d at 1055, n. 9 (quoting *Tony's Tortilla*, 877 S.W.2d at 287).

On the other hand, this case presents an issue markedly different from that in *Video Trax*. As alleged in the Complaint, the Extended Overdraft Fees charged by BOKF is not a service-based charge because it compensates BOKF solely for the customer's use of advanced funds should the customer fail to repay those funds within five business days.  Pursuant to the definition of "interest" utilized by the court in *Video Trax*, when a customer pays an extended overdraft fee, the customer, as debtor, is compensating the bank, as creditor, for the extended use of funds.[4]  Thus, the Extended Overdraft Fees charged by BOKF constitutes interest.

This conclusion is also supported by the definition of "interest" appearing in 12 C.F.R. § 7.4001(a), which specifically includes "late fees" and states:

> The term "interest" as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit

---

[4] BOKF's reliance on *Video Trax* for the proposition that overdrafts are not "extensions of credit," is unavailing to the issues presented in this case because the court's entire analysis was focused on the "service" nature of initial overdraft fees and did not deal with time-triggered charges such as Extended Overdraft Fees.

was extended.  It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, *late fees*, …. (Emphasis added).

That BOKF labels the charges as Extended Overdraft Fees does not obviate the fact that they are charged when its customers fail to repay a debt.   Indeed, BOKF's deposit agreement expressly requires its customers to repay advanced funds immediately, and further states that the Bank will impose additional charges if payment is not received by the Bank within five business days.  The Extended Overdraft Fees at issue fall squarely within the definition of interest under 12 C.F.R. § 7.4001 and the NBA.[5]

BOKF's reliance on an OCC interpretative letter is also misplaced.  OCC Interpretive Letter No. 1082, 2007 Westlaw 5393636 (May 17, 2007) states that "[c]reating and ***recovering overdrafts*** have long been recognized as elements of the discretionary deposit account services that banks provide.  Where a customer created debits on his or her account for amounts in excess of the funds available in that account, a bank may elect to honor the overdraft and then ***recover the overdraft amount*** as part of the posting of items and clearing of the depositor's account.  These activities are part of or incidental to the business of receiving deposits" (emphasis added).  BOKF is doing well more than "creating" and then "recovering" overdraft amounts as part of normal deposit account operations.  It has also decided to charge an *additional* fee based on indebtedness alone.  This activity is nowhere covered by the OCC Interpretative Letter No. 1082.

---

[5] BOKF urges this Court to ignore § 7.4001, and instead, focus exclusively on § 7.4002, which addresses service-based charges.  Motion at 4 n. 2.  To do so, however, would be improper because § 7.4002(c) specifically prohibits the application of § 7.4002 where a bank charge falls within the definition of interest under § 7.4001.  The regulation states: "Charges and fees that are 'interest' within the meaning of 12 U.S.C. 85 are governed by § 7.4001 and not by this section." 12 C.F.R. § 7.4002(c).

**B.      Banking Regulations Support the Argument That Extended Overdraft Fees are Interest.**

To skirt the requirements of 12 C.F.R. § 7.4001(a) and avoid having its Extended Overdraft Fees being categorized as interest, BOKF argues throughout the Motion that the charges do not arise from any "extension of credit" by the Bank.[6]  However, the argument does not pass muster when read in context with banking regulations as a whole.  For example, while 12 C.F.R. § 7.4001 does not contain a definition section, the term "extension of credit" is defined in Regulation O.  *See* 12 C.F.R. § 215.  One of the provisions within that regulation explains that an "extension of credit" specifically includes advances caused by overdrafts:

> § 215.3 Extension of Credit.
>
> (a) An extension of credit is a making or renewal of any loan, a granting of a line of credit, or an extending of credit in any manner whatsoever, and includes:
>
> . . .
>
> (2) An advance by means of an overdraft, cash item, or otherwise; . . . .

(Emphasis added).[7]

Including an "advance by means of an overdraft" within the definition of an "extension of credit" makes logical sense.  By covering an overdraft, the bank is certainly not giving its customer a gift.  Rather, it is advancing money to that customer in return for the customer's

---

[6] If this were true, then there would be no valid basis for BOKF to charge interest on any overdraft amount in any of its customers' accounts.  Only through discovery will Plaintiffs be able to determine whether BOKF does, in fact, charge interest on some accounts.  In the event that BOKF does, BOKF would be treating those amounts as extensions of credit upon which interest can be charged—a practice that would run contrary to the argument it is currently making to the Court.

[7] While this definition appears in the section addressing extensions of credit to insiders of the bank, the regulation goes on to reflect that it is designed *to ensure that insiders are treated in the same manner as all other persons who are not insiders and not employed by the bank*.  12 C.F.R. § 215.4(a) (emphasis added).  In other words, it is intended to put insiders on the same footing as all other bank customers.

express agreement to repay that amount pursuant to the terms of its deposit agreement.  Whether this credit is extended for a week, a month, or whatever period of time, the bank is entitled to charge for that credit extension, and that charge is called "interest."  By any definition, what is at issue here is a credit arrangement.

However, not only is this concept reflected in current baking regulations, but courts in various jurisdictions have applied this same common sense view.  *See, e.g., First Dakota Nat. Bank v. First Nat. Bank of Plainview*, No. CIV. 08-4167, 2011 U.S. Dist. LEXIS 106102, at *17-18 (D.S.D. Sept. 19, 2011) (observing that "many courts in numerous jurisdictions have held that when a bank voluntarily pays a check as an overdraft, it makes a loan to its customers" and ruling that "[i]t is the Court's conclusion that the repeated overdrafts and negative balances covered by [the bank] were the equivalent of unsecured loans to [its customers]").

**C.**      **BOKF Raises Fact Questions That Cannot Be Resolve At The Motion To Dismiss Stage.**

Given the foregoing analysis, BOKF's Motion must be denied.  However, even if this Court were to give credence to any points that BOKF has raised, at the most, it has introduced fact issues, inappropriate for resolution on a motion to dismiss.  For example, BOKF argues that its payment of a check that creates an overdraft is not really an extension of credit or a charge for the forbearance of money.  At the very least, Plaintiff is entitled to pursue discovery into whether the Bank's own policies and procedures support or refute the existence of a credit arrangement.  Did the Bank assess such fees as compensation for consumers' use of funds over time?

Moreover, BOKF argues that the Extended Overdraft Fees are subject to the "non-interest charges" provision of 12 C.F.R. § 7.4002.  The clear terms of that regulation raise fact questions that could only be resolved with the benefit of discovery, such as: (1) whether the Bank established the Extended Overdraft Fees "in accordance with safe and sound banking principles;"

(2) whether the Bank had a "decision-making process" for establishing the Extended Overdraft Fees and what that process was; and (3) whether the Bank actually considered the listed factors when establishing the Extended Overdraft Fees.

BOKF's own authorities highlight that evidence would be needed on such points. *See, e.g., Nicolas*, 182 F.R.D. at 231 (after quoting 12 C.F.R. § 7.4002, noting that the bank "has provided sufficient evidence, unrefuted by [plaintiff], showing that the NSF fee substantively satisfied the above reasonableness factors"); *Terrell*, 7 F. Supp. 2d at 816 (noting that the fees at issue satisfied the reasonableness factors set forth in 12 C.F.R. § 7.4002). Most telling, however, is the fact that prior to granting summary judgment in favor of the defendant bank in *Video Trax*, 33 F. Supp. 2d 1041, the court refused to dismiss the plaintiff's claims that the bank's overdraft charges constituted interest pursuant to the NBA at the motion to dismiss stage. According to the court, at that early stage of the proceedings, "the record [was] bare as to many of the facts deemed critical to the Texas Supreme Court in determining that the fee there was not interest. As such, defendant has failed to demonstrate that the NSF fee here is of the same character as the fees examined in *Tony's Tortilla Factory*." *Video Trax*, No. 97-1586-CIV-GOLD (S.D. Fla. Dec. 31, 1997) (Dkt. 35 at p. 10). Similarly, BOKF has failed to do so here, and therefore, dismissal is improper.

## V. CONCLUSION

As demonstrated by the above arguments, BOKF has failed to meet its burden to demonstrate beyond doubt that Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Accordingly, Plaintiff respectfully requests that this Court deny BOKF's Motion and order BOKF to file an Answer to Plaintiff's well-pled Complaint.

Dated: June 15, 2015.                    Respectfully Submitted

                                         /s/ *Douglas A. Rice*
                                         LARRY DERRYBERRY, OBA No: 2318
                                         DOUGLAS A. RICE, OBA No: 16297
                                         **DERRYBERRY & NAIFEH, LLP**
                                         4800 North Lincoln Boulevard
                                         Oklahoma City, OK   73105
                                         Telephone:  (405) 528-6569
                                         Facsimile:   (405) 528-6462
                                         lderryberry@derryberrylaw.com
                                         drice@derryberrylaw.com

                                         /s/ *Jeffrey M. Ostrow*
                                         JEFFREY M. OSTROW, FL Bar No: 121452
                                         JASON H. ALPERSTEIN, FL Bar No: 064205
                                         Admitted *Pro Hac Vice*
                                         **KOPELOWITZ OSTROW P.A**.
                                         200 S.W. First Avenue, 12th Floor
                                         Fort Lauderdale, FL   33301
                                         Telephone:  (954) 525-4100
                                         Facsimile:    (954) 525-4300
                                         ostrow@kolawyers.com
                                         alperstein@kolawyers.com

                                         ***COUNSEL FOR PLAINTIFF AND THE
                                         PROPOSED CLASS***

## CERTIFICATE OF SERVICE

I certify that on the 15th day of June, 2015, I electronically transmitted the *Plaintiff's Motion for Extension of Time to Respond to the Defendant's Motion to Dismiss* to the Clerk of Court using the ECF System for filing and simultaneously transmitted a Notice of Electronic Filing to the following ECF registrants:

***Counsel for Defendant:***

*Frederic Dorwart –* fdorwart@fdlaw.com
*Sarah W. Poston –* sposton@fdlaw.com
*J. Michael Medina –* mmedina@fdlaw.com


*/s/  Douglas A. Rice* _____
 Douglas A. Rice